# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 06-CR-0290 (JFB) (ARL)
_____

UNITED STATES OF AMERICA,

versus

STEVEN MESZAROS,

Defendant.

_____

MEMORANDUM AND ORDER
November 25, 2008
_____

JOSEPH F. BIANCO, District Judge:

On May 31, 2007, the Grand Jury returned a Superseding Indictment charging defendant Steven Meszaros in seven counts. Counts One and Two related to defendant's alleged participation in a scheme to defraud an investor from December 1999 until September 2001 in connection with the defendant's partnership in, and the day-to-day operation of, two day-trading entities, collectively referred to as "Nexus/Livestreet." Counts Three through Six related to defendant's alleged participation in a scheme to defraud other investors from January 2003 until January 2007 during defendant's employment at a day-trading company called JPR Capital Corp. and the formation of a corporation called Penta-Cycle Group, of which defendant was the sole shareholder. Count Seven alleged that defendant committed the conduct in Counts Three through Six while on bail in violation of Title 18, United States Code, Sections 3147(1) and 3551.

On August 20, 2007, defendant moved, pursuant to Rules 8 and 14 of the Federal Rules of Evidence, for an order severing Counts One and Two from Counts Three through Six of the Superseding Indictment. Defendant also made the following pre-trial motions seeking an order to: (1) suppress post-arrest statements allegedly made by the defendant; (2) compel disclosure of the Government's unnamed sources; (3) compel the disclosure of exculpatory evidence; (4) dismiss Count Seven and strike prejudicial surplusage contained in Paragraph 36 of the Superseding Indictment; (5) compel a hearing pursuant to *Massiah v. United States*, 377 U.S. 201 (1964) for recordings made of the defendant regarding the alleged Penta-Cycle scheme subsequent to his arrest on the alleged Nexus/Livestreet scheme, as well as a hearing to determine whether the recording was a fair and accurate representation of the entire exchange between the parties; (6) compel the government to disclose a witness list in advance of trial; (7) compel the government to

disclose Rule 404(b) evidence in advance of trial; and (8) compel the government to identify in advance of trial the documents it intends to introduce at trial.

On October 26, 2007, with the exception of the suppression motion, the Court heard oral argument regarding the motions and made rulings on the record. In particular, the Court denied the motion for severance for the reasons articulated on the record, and also stated that this more detailed written opinion would follow with respect to the severance motion.[1]

For the reasons set forth below and orally on the record in Court, the severance motion is denied.[2]

## I. THE SUPERSEDING INDICTMENT

Set forth below is a summary of the factual allegations contained in the Superseding Indictment. The summary separately describes the scheme to defraud through the use of the interstate wires alleged in Counts One (charging conspiracy to commit wire fraud) and Two (charging wire fraud) of the Superseding Indictment regarding defendant's activities at Nexus/Livestreet and the scheme to defraud through the use of interstate wires contained in Counts Three through Six regarding defendant's activities related to Penta-Cycle Group.

### A. The Alleged Nexus/Livestreet Wire Fraud Scheme (Counts One and Two)

Nexus Asset Management, L.L.C. ("Nexus") and its successor, Livestreet, L.L.C. ("Livestreet") (collectively, "Nexus/Livestreet") were limited liability corporations located in Garden City, New York, that provided a location for "day traders" to "day trade." (Superseding Indictment ¶ 1.) The defendant and an unidentified co-conspirator were partners in

---

[1] The other motions were resolved in the following manner during the October 26 conference: (1) the Court granted the motion to dismiss Count Seven and strike the surplusage contained in Paragraph 36 of the Superseding Indictment; (2) the motion to compel disclosure of the government's unnamed sources was rendered moot, as confirmed by defense counsel, because they had learned the identity of these individuals; (3) with respect to the motion for Rule 404(b) notice, an exhibit list, and a witness list, those motions were resolved by agreement between the parties that the government would provide Rule 404(b) notice, an exhibit list, and 3500 material for its witnesses two weeks prior to trial; (4) with respect to the motion to compel disclosure of exculpatory material, that issue was resolved by the government's written representation that it was not aware of any exculpatory material or information discoverable under *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny; and (5) the Court denied the request for a *Massiah* hearing because it was undisputed that the defendant had not been charged with the Penta-Cycle scheme at the time of the recordings and, with respect to any issues regarding the completeness of the recordings, the Court ruled that defendant could renew that motion after the government had established the foundation for the admissibility of the recordings at trial. As to the motion to suppress the post-arrest statements, the Court held a hearing on December 20, 2007 and the Court subsequently denied the motion. However, the government later decided not to introduce the post-arrest statements into evidence at the trial.

[2] On July 9, 2008, after a jury trial, the jury returned a guilty verdict on all the remaining counts contained in the Superseding Indictment – namely, Counts One through Six.

2

Nexus/Livestreet and ran its day-to-day operations. (*Id.* ¶ 4.) The defendant was a stock broker who was licensed by the National Association of Securities Dealers, Inc. ("NASD") and was also an authorized broker-representative of Terra Nova Trading, L.L.C. ("Terra Nova"), who processed stock trades at Terra Nova for day traders at Nexus/Livestreet. (*Id.*)

As set forth in Counts One and Two of the Superseding Indictment, it is alleged that defendant and a co-conspirator solicited investment funds from Victim #1 to loan to day traders, and represented to Victim #1 that the loans would generate interest in excess of twelve percent and that the loans would be risk free because Nexus/Livestreet would stop the trading activity of a day trader if the trader's account fell below the amount of funds that the day trader personally contributed to the account. (*Id.* ¶ 9.) It is further alleged that, by December 2000, the Victim #1 account contained approximately $1.15 million of Victim #1's funds, which were loaned to Nexus/Livestreet day traders, and that day traders lost in excess of $519,000 of the $1.15 million received as loans from Victim #1. (*Id.* ¶¶ 10-11.) It is also alleged that, from January 2001 through October 2001, defendant and others caused false written reports to be prepared and provided to Victim #1 regarding the day traders' account balances to conceal that they had lost a substantial amount of these funds. (*Id.* ¶ 12.) According to the Superseding Indictment, based upon these false representations, in April 2001, Victim #1 invested an additional $300,000 which was provided to day traders as loans and, by December 1, 2001, day traders had lost in excess of $200,000 of that additional $300,000. (*Id.* ¶ 14.)

B. The Alleged Penta-Cycle Wire Fraud Scheme (Counts Three through Six)

The Superseding Indictment further alleges that, from in or about June 2002 to June 2005, defendant engaged in day trading at JPR Capital by utilizing funds maintained in accounts held at JPR Capital in the names of customers. (*Id.* ¶ 7.) It is further alleged that, from July 2005 to March 2007, defendant was an employee of JPR Capital and held 2,100 shares of preferred stock of JPR Capital. (*Id.*) The Superseding Indictment, as set forth in Counts Three through Six, describes a fraudulent scheme involving the defendant in connection with investments by customers for day-trading activity.

Specifically, it is alleged that, in June 2002, the defendant solicited an investment from Victim #2 and told Victim #2 that he had a conservative investment strategy and Victim #2 could expect annual returns of between eight to twelve percent. (*Id.* ¶ 15.) It is further alleged that, from January 31, 2003 to November 30, 2003, the account balance in Victim #2's account went from approximately $1,560,000 to approximately $917,000, but the defendant falsely represented to him that the losses were not accurate because it did not reflect other money the victim had invested and falsely claimed to Victim #2 that his total investment had actually increased. (*Id*. ¶ 18.) According to the Superseding Indictment, the defendant, based on the false representations, solicited and obtained an additional investment of $500,000 from Victim #2. (*Id.* ¶ 19.) The Superseding Indictment also alleges that similar false representations were made with respect to the investment in May 2003 made by Victim #3 and Victim #4 (the "Married Victims"). (*Id.* ¶¶ 21-25.)

According to the Superseding Indictment,

3

in or about July 2005, the defendant informed Victim #2 and the Married Victims that he was starting his own investment fund named Penta-Cycle and solicited investments in Penta-Cycle from them. (*Id.* ¶ 26.) The defendant allegedly told them that the Penta-Cycle fund operated in the same manner as their investments at JPR Capital and that the defendant would trade securities in the Penta-Cycle fund, but they could expect an even higher rate of return. (*Id.*) It is alleged that, based on these representations, these victims agreed to liquidate their JPR Capital accounts, and transfer that money, as well as provide additional monies, into this fund of the Penta-Cycle Group, Inc., a corporation formed by Meszaros. (*Id.* ¶¶ 26-29.) After such transfer, it is alleged that the defendant provided false representations to these investors, including in writing, regarding the value of their investment to hide that they were losing money and that the defendant was diverting those funds through unauthorized withdrawals. (*Id.* ¶¶ 30-34.) The Superseding Indictment alleges that some of the unauthorized withdrawals were made to, among other things, pay for expenditures or debts incurred during, or related to, his activities at Nexus/Livestreet. (*Id.* ¶ 35.) It is also alleged that he used a bank account in the name of "Livestreet" to transfer money obtained from the second alleged scheme regarding Penta-Cycle. (*Id.*)

## II. DISCUSSION

Defendant moved to sever Counts One and Two from Counts Three through Six under Rules 8(a) and 14. As discussed during the Court's oral ruling on October 26, 2007 and in detail below, the counts were properly joined under Rule 8(a) and defendant failed to establish a basis for severance under Rule 14. The Court will discuss each issue in turn.

### A. Joinder Under Rule 8(a)

Pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure, two or more offenses may be joined in an indictment against a single defendant if such offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). As the Second Circuit has explained, Rule 8 "reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *United States v. Turoff,* 853 F.2d 1037, 1042 (2d Cir. 1988); *accord United States v. Amato,* 15 F.3d 230, 237 (2d Cir. 1994); *see also United States v. Orena,* 986 F.2d 628, 631 (2d Cir. 1993) (government can use joint trials "as a means of economizing judicial and other resources[,]" and complying with its due process obligations). In conducting a Rule 8(a) analysis, "no one characteristic is always sufficient to establish 'similarity' of offenses, . . . and each case depends largely on its own facts." *United States v. Blakney,* 941 F.2d 114, 116 (2d Cir. 1991) (quotations and citation omitted). Moreover, "Rule 8(a) is not limited to crimes of the 'same' character but also covers those of 'similar' character" and, thus, does not require "too precise an identity between the character of the offenses." *United States v. Werner,* 620 F.2d 922, 926 (2d Cir. 1980). In addition, "[j]oinder is proper where the same evidence may be used to prove each count." *Blakney,* 941 F.2d at 116.

In the instant case, the Court concludes that the alleged Nexus/Livestreet Scheme charged in Counts One and Two and the Penta-Cycle Scheme charged in Counts Three through Six "are of the same or similar character" and are "connected with, or

4

constitute parts of a common plan or scheme" and, therefore, are properly joined under Rule 8(a).

First, the face of the Superseding Indictment makes clear that the two schemes are of similar character. In particular, as set forth in the Superseding Indictment, both schemes relate to, among other things, the alleged use of false oral and written statements by defendant, in connection with his position at different day trading firms, that were made to investors regarding the current value of their investments to ensure the investors would maintain the monies already invested, and to induce additional investments.

For example, with respect to the Nexus/Livestreet Scheme, the Superseding Indictment alleges that false documents called Morning Reports were prepared for Victim #1 that misrepresented to Victim #1 that the day traders had sufficient money in their accounts to repay the funds that Victim #1 had invested to be loaned to day traders:

> In or about and between January 2001 and October 2001, the defendant STEVEN MESZAROS and the co-conspirator, together with others, caused to be prepared fictitious daily financial statements ("Morning Reports") for Victim #1 that stated that the day traders maintained adequate balances in their Terra Nova accounts to repay the funds loaned by Victim #1 when, as MESZAROS and the co-conspirator well knew and believed, the Morning Reports were false and the day traders were not maintaining adequate balances in their Terra Nova accounts to repay the funds loaned by Victim #1.

(Superseding Indictment ¶ 12.) The Superseding Indictment further alleges the defendant and his co-conspirators solicited additional funds from Victim #1 to lend to Nexus/Livestreet day traders and, relying in part upon the fictitious Morning Reports, Victim #1 invested an additional $300,000 on April 2, 2001. (*Id.* ¶ 14).

Similarly, with respect to the Penta-Cycle Scheme, defendant Meszaros is also alleged to have provided false oral and written representations to investors regarding the value of their accounts in order to hide the fact that the defendant and his co-conspirators had, in fact, lost substantial amounts of their investment through day-trading activities. For example, the Superseding Indictment alleges that defendant provided false assurances to Victim #2 that, although his account had decreased in value, the decrease in the account did not reflect other investments that Victim #2 had made:

> On or about and between January 31, 2003 and November 30, 2003, the account balance in the Victim #2 Securities Trading Account decreased from approximately $1,560,000 to approximately $583,000, reflecting an aggregate loss of approximately $917,000. The defendant STEVEN MESZAROS falsely represented to Victim #2 that the decrease in the account

5

balance did not reflect certain "shorts" and "open positions," and falsely claimed that the account balance in the Victim #2 Securities Trading Account had actually increased in value.

(*Id*. ¶ 18.) The Superseding Indictment further alleges that, based upon these continuing false representations to Victim #2 regarding the true value of his account, defendant sought and obtained an additional $500,000 investment from Victim #2. (*Id*. ¶ 19.) In connection with the Penta-Cycle Scheme, the Superseding Indictment also alleges that the defendant made false representations to the Married Victims that their account statements, which reflected that the investment money had decreased, were incorrect and that their money had increased, which resulted in an additional investment by the Married Victims based upon these misrepresentations:

> On or about and between May 13, 2003 and February 27, 2004, JPR Capital account statements that were sent to the Married Victims by Southwest Securities via United States mail reflected that the Married Victims Securities Trading Account balance had decreased from $100,00 to approximately $92,260. During this time period, however, the defendant STEVEN MESZAROS falsely represented to the Married Victims that the account balance in the Married Victims Securities Trading Account had increased, when, as MESZAROS well knew and believed, the account balance had not increased. Based upon this misrepresentation, MESZAROS solicited an additional investment from the Married Victims. In response, on or about March 2, 2004, the Married Victims provided MESZAROS with a second $100,000 check drawn from the Fleet - B of A Account that was deposited in the Married Victims Securities Trading Account.

(*Id*. ¶ 23.) Therefore, the allegations of the Superseding Indictment demonstrate the similar nature of both the Nexus/Livestreet and Penta-Cycle schemes – namely, the defendant predicting a high rate of return to investors from day-trading activities and then making false statements to investors to hide the subsequent losses being sustained with respect to their investments and to induce them to make additional investments.[3]

In addition to being of a similar character,

---

[3] To the extent defendant argues that the characteristics in these alleged schemes are common to all frauds, the Court disagrees. In today's global economy and complex financial markets, fraudulent schemes involving investors can take many different forms and involve highly different methods. The particular manner in which the two alleged schemes were carried out here – including the similar allegations regarding the solicitation of the money from investors, the particular misrepresentations regarding the current value of their investments that were used to hide the depletion and/or misappropriation of the money and to induce additional investments – are by no means common to every investment scheme.

the face of the Superseding Indictment also reflects that the two schemes are connected with a common plan or scheme. Specifically, although the schemes were separated in time and involved different victims, the Superseding Indictment alleges that the defendant fraudulently, and without authorization from the investors, used investment funds obtained in the second scheme (namely, the Penta-Cycle scheme) to make certain payments related to some aspects of Nexus/Livestreet that still remained outstanding even after defendant ended his involvement with Nexus/Livestreet:

> In or about and between July 2005 and January 2007, MESZAROS made unauthorized withdrawals from the Penta-Cycle Account that were used to pay, among others, a former Nexus/Livestreet day trader whose identity is known to the Grand Jury, and MESZAROS' criminal and civil attorneys. MESZAROS transferred additional funds from the Penta-Cycle Account to the MESZAROS JP Morgan Chase Account, to a bank account in the name of MESZAROS' wife, Kirsten Meszaros, at JP Morgan Chase Bank, N.A., account number 037-1164690 (the "Kirsten Meszaros Account"), and to an account in the name of "Livestreet" at JP Morgan Chase Bank, N.A., account number 849-5015829-65, which was controlled by MESZAROS. Mortgage payments were subsequently made out of the Kirsten Meszaros Account relating to property located at 44 Highland Road, Glen Cove, New York.

(*Id.* ¶ 35.) Thus, these two schemes are connected parts of a common scheme because of the defendant's alleged unauthorized use of money from the Penta-Cycle Scheme to pay items related to Nexus/Livestreet, including his criminal and civil attorneys and a former Nexus/Livestreet day trader, as well as a transfer of money from a Penta-Cycle account into an account in the name of "Livestreet." *See, e.g., Blakney,* 941 F.2d at 116 (where defendant sought to pay for guns by giving cocaine, "[t]he evidence in support of the two counts was thus interconnected, and the interests of judicial efficiency were served by having the counts tried together"). This alleged interrelatedness of money from the two alleged fraudulent schemes, combined with the similar nature of the schemes, provides a clear basis for determining that they are connected by a common scheme or plan.

Although defendant argues that Rule 8(a) is not satisfied because the schemes are "entirely unrelated, occurred at least two years apart, and will require different witnesses and evidence," (*see* Defendant's Reply Memorandum of Law, at 2), the Court finds those contentions to be inaccurate based upon the allegations in the Superseding Indictment and unpersuasive. First, as discussed above, the alleged schemes are not unrelated; rather, they both involve allegations of the defendant obtaining money from investors based upon similar false representations regarding the value of their investment, as well as the use of money obtained from investors in one scheme to pay certain items related to the earlier

7

scheme. Second, the time frame separating the two schemes based upon the dates in the Superseding Indictment is less than one year, rather than at least two years. In particular, Count One alleges that the Nexus/Livestreet conspiracy ended in or about December 2001, and Count Six alleges that the second wire fraud scheme began in or about June 2002. (Superseding Indictment ¶¶ 38, 45.) In any event, the time differential – even if it is two years – does not undermine the similarities and the common scheme alleged in the Superseding Indictment that satisfy the requirements of Rule 8(a). *See United States v. Smith,* No. 05 Cr. 922 (DLC), 2007 WL 980431, at *2 (S.D.N.Y. Apr. 3, 2007) ("even with the temporal gap and the presence of violence in only one set of charges, the two sets of crack conspiracies are sufficiently similar in character and, in the words of Rule 8, constitute parts of a common scheme or plan."). Finally, the fact that different witnesses and evidence may be involved in each scheme does not render joinder improper. In fact, as discussed *infra*, evidence from each scheme would be admissible under Rule 404(b) and Rule 403 at a separate trial involving the other scheme. Therefore, a joint trial in this case "conserves judicial resources, alleviates the burdens on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Lyles,* 593 F.2d 182, 191 (2d Cir. 1979) (citation omitted); *see also United States v. Werner,* 620 F.2d 922, 928 (2d Cir. 1980) (the purpose of the rule is to address "trial convenience and economy of judicial and prosecutorial resources – considerations of particular weight when the Government and the courts have been placed under strict mandate to expedite criminal trials") (citations omitted).

The Court's determination in the instant case that joinder is warranted is consistent with Second Circuit decisions, as well as decisions by numerous other courts in this and other Circuits, which have found joinder to be appropriate under analogous circumstances. For example, in *United States v. Gordon,* 655 F.2d 478 (2d Cir. 1981), the Second Circuit found that joinder was warranted where the defendant, a financial advisor, was charged with defrauding four separate victims. In reaching this decision, the Second Circuit explained:

> This Court has stated that "too precise an identity between the character of the offenses" charged in one indictment should not be required. *United States v. Werner,* 620 F.2d 922, 926 (2d Cir. 1980). Here it is sufficient that Gordon allegedly misused his particular position to accomplish his fraudulent purposes in each of the counts charged. Moreover, Gordon's representations to the individuals named in the indictment were similar in nature; in each case he promised to invest money in certificates of deposit or other property.

*Id.* at 484-85 (citation omitted).

Similarly, in *United States v. Orefice,* No. 98 Cr. 1295 (DLC), 1999 WL 349701 (S.D.N.Y. May 27, 1999), the indictment alleged that the defendant operated through several different entities and participated in three different schemes to defraud different investors, where the first scheme was separated by two years from the second

8

scheme and by over four years from the third scheme. The court concluded that, because of the similar nature of the schemes, joinder under Rule 8(a) was warranted:

> The Court regards the three schemes to be of a sufficiently similar character so as to be properly joined under Rule 8. During the period of time for which the schemes are alleged, Orefice, operating through a series of entities controlled by him, held himself out as a financial adviser. In this professional capacity, on three instances he is alleged to have promised to complete an investment or financing transaction for clients, solicited money up front to complete the transaction, failed to carry out the transaction, and then converted the advanced money to his own use. These factors constitute sufficient similarity to meet the "same or similar character" requirement of Rule 8(a). The fact that different victims were involved and that the defendant used slightly different methods to obtain the advanced monies do not create sufficient differences so as to make joinder improper.

*Id.* at \*7; *see also United States v. Levine,* 983 F.2d 165, 167 (10th Cir. 1992) ("We have previously held that joinder of bank fraud and mail fraud charges is proper where both charges result from attempting to defraud victims through the submission of falsified documents. The alleged offenses of bank fraud and mail fraud were of 'same or similar character.'") (citation omitted).

Although defendant attempts to distinguish *Gordon* by arguing that all four victims were defrauded when the defendant was president of a particular financial planning company, the Court finds that contention unavailing. The fact that the Superseding Indictment in the instant case alleges that the defendant defrauded these victims while holding positions at different investment entities controlled in part by him, rather than at the same company, does not distinguish *Gordon* and eviscerate the application of Rule 8(a). *See, e.g., United States v. Pescatore,* No. 05 Cr. 128TCPARL, 2006 WL 47451, at \*15 (E.D.N.Y. Jan. 5, 2006) ("The distinctions which the Defendant attempts to draw between the various counts are inconsequential.") Here, the defendant is alleged to have misused his position at each day trading entity that invested money in the stock market to make false representations to the victim investors that were very similar in nature for the same alleged objective – namely, to allegedly hide the fact that their investment was losing money and to entice them to invest additional money. Under such circumstances, Rule 8(a), as it was in *Gordon*, is clearly satisfied.[4]

---

[4] The other Second Circuit cases relied upon by defendant are clearly distinguishable from the instant case because of the dissimilar nature of the joined offenses in those cases. *See United States v. Tubol,* 191 F.3d 88 (2d Cir. 1999) (finding improper joinder of separate robberies where "distinctly different methods" and "distinctly different victims" were involved in each robbery – namely, a robbery of an appliance store with a gun and a robbery of a bank by an individual "dressed as a Hasidic Jew" who was carrying a fake bomb); *United States v. Halper,* 590 F.2d 422, 430 (2d Cir. 1978) (improper joinder under

B. Prejudice under Rule 14

Even though the Court finds joinder proper under Rule 8, the Court must also consider whether severance is warranted under Rule 14 because of unfair prejudice. Specifically, Rule 14 provides, in pertinent part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Supreme Court has explained that such prejudice exists when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993); *accord United States v. Rittweger,* 524 F.3d 171, 179 (2d Cir. 2008). As noted by the Second Circuit, "[g]iven the balance struck by Rule 8, which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" *Amato,* 15 F.3d at 237 (quoting *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988)); *see also United States v. Sampson,* 385 F.3d 183, 190 (2d Cir. 2004) ("[G]ranting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case.") (citing *Werner,* 620 F.2d at 929).

Rule 8(a) where Medicaid fraud indictment arising from defendant's failure to ensure that his laboratory had honest billing practices was joined for trial with income tax evasion charge).

Thus, severance is not appropriate "merely because [the defendant] may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Furthermore, even where there is a serious risk of prejudice, "less drastic measures – such as limiting instructions – often suffice as an alternative to granting a Rule 14 severance motion." *United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003); *see also Zafiro,* 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."). Such limiting instructions include directing the jury to consider each count separately. *Werner*, 620 F.2d at 929.

Applying the Rule 14 standard, this Court does not find that there is sufficient prejudice to warrant a severance. Here, the likelihood of jury confusion regarding the two schemes is minimal because, though the alleged schemes are very similar, they involve defendant's position at different entities with different victims. In any event, as noted above, any generalized concerns about such potential confusion or prejudice are insufficient to warrant a separate trial because such concerns can be addressed by instructions to the jury, including an instruction that they need to consider each count separately.[5] *See, e.g., Werner,* 620 F.2d at 929 ("The jury could readily examine Werner's conduct on the two different

---

[5] Similarly, even though defendant raised the specter that he might want to testify about one scheme but not the other and reserved the right to renew the motion under Rule 14 should it become clear that defendant wants to do that, such "a mere unexplicated assertion" of that nature is insufficient to warrant severance. *Werner,* 620 F.2d at 930.

10

occasions separately and Judge Costantino clearly and repeatedly ordered it to do so, in language fully measuring up to that approved by the cases.") (citation omitted); *accord United States v. Gomez-Reynoso,* No. 95 Cr. 402 (JFK), 1995 WL 542455, at *3 (S.D.N.Y. Sept. 12, 1995) ("any potential prejudice to the defendant caused by the joinder of counts will be cured when the Court instructs the jury to consider each count separately and to render a separate verdict on each count").

More importantly, there is absolutely no prejudice to Meszaros in this case because, even if the counts were severed for trial, evidence regarding each scheme would be admissible at a separate trial for the other scheme under Rule 404(b) of the Federal Rules of Evidence. *See United States v. Peoples,* 748 F.2d 934, 936 (2d Cir. 1984) ("Unfair prejudice does not result if evidence admissible to prove each charge is also admissible to prove the other charge."). Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, the Rule then provides that "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The Second Circuit's 'inclusionary approach' to the admission of other act evidence 'allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity.'" *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. LaFlam,* 369 F.3d 153, 156 (2d Cir. 2004) (per curiam)). Moreover, "'[s]ubsequent act' evidence may be admitted under Rule 404(b)." *United States v. Germosen,* 139 F.3d 120, 128 (2d Cir. 1998); *see also United States v. Ramirez,* 894 F.2d 565, 569 (2d Cir. 1990) ("[W]hether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility.")

Here, evidence of each scheme is admissible in a separate trial of the other scheme to show, among other things, intent, knowledge, and the absence of mistake. In particular, to the extent defendant could argue with respect to either scheme that he lacked intent to defraud investors with any incorrect representations that were made to them regarding the status or value of their investment, evidence regarding the other scheme is admissible under Rule 404(b) to demonstrate intent and show the absence of mistake or accident.[6] For example, in *United States v. Rutkoske,* No. 03 Cr. 1452 (RCC), 2005 WL 3358596 (S.D.N.Y. Dec. 8, 2005), the court allowed evidence of a subsequent securities fraud scheme four years after the charged fraud scheme to be admitted under Rule 404(b) in order to prove knowledge:

> Here, the Government seeks to introduce evidence of Defendant's role in a subsequent securities scheme in order to combat the possible claim by Defendant that he was an "innocent participant" because he did not possess knowledge of the corrupt nature of the scheme alleged in the indictment. This

---

[6] Moreover, the admission of such evidence would also survive a Rule 403 balancing because the highly probative nature of such evidence is not substantially outweighed by the danger of unfair prejudice or any other basis for preclusion under Rule 403.

11

purpose is valid under Rule 404(b) (and the Second Circuit's inclusionary approach) and is certainly probative to show that, when Defendant signed the checks containing abnormally high commissions, he would have known that the commissions were received as part of a larger scheme. The proffered evidence also tends to show an absence of mistake, another valid purpose under Rule 404(b) . . . . While comparison of the excerpted transcripts and the indictment does not reveal identical schemes, they are sufficiently similar for the purposes of showing that Defendant was conversant in the language of stock manipulation such that his participation in the NetBet scheme could not be considered innocent for want of knowledge.

*Id.* at *2. The Second Circuit affirmed the district court's determination, noting that "[i]n light of the similarity between the NetBet and Paradise Tan schemes, the District Court did not exceed its discretion in determining that the Paradise Tan conversations were relevant, notwithstanding the fact that they took place four years after the charged conspiracy." *United States v. Rutkoske,* 506 F.3d 170, 178 (2d Cir. 2007); *see also United States v. Smith,* 727 F.2d 214, 220 (2d Cir. 1984) ("At trial, Smith claimed that he did not have the intent to commit the acts charged in the indictment and that instead he was the victim of other brokers . . . and of market forces. Thus, the similar acts evidence – which according to the government indicated that Smith misappropriated Jupiter stock owed to certain investors in the Jupiter private placement, caused others to file fraudulent statements with the Alberta Securities Commission, and paid for certain Jupiter stock options with a worthless check – was directly relevant under Fed. R. Evid. 404(b) as to Smith's knowledge of, and intent to, commit the frauds charged in the indictment."); *United States v. Orefice,* 1999 WL 349701, at * 7 ("[P]roof of each of the schemes may very well be admissible against the defendant even if he were tried on only one scheme. The defense appears to be that the defendant had no intention to commit a fraud. Evidence that the defendant during the same five year period obtained substantial sums of money through similar fraudulent representations – should the Government be able to prove such – may very well be admissible under Rule 404(b), Fed. R. Evid. In such circumstances, a motion to sever is properly denied.") (citation omitted).

In addition, the evidence of one scheme would also be admissible in the trial of the other because there are certain aspects of the two schemes that are inextricably intertwined, that help explain the conduct and motive of the defendant with respect to the second scheme, and provide evidence of a common scheme or plan. Defendant argues that "it is unclear why a jury in a severed Penta-Cycle trial would need to know about the original Nexus/Livestreet Indictment" because "[t]o the extent that the Government alleges that specific withdrawals from the Penta-Cycle fund were inappropriate, it should be sufficient to show that such withdrawals were not authorized by the investors and/or the controlling investment agreements." (Defendant's Reply Memorandum of Law, at 5.) However, the Court disagrees. For

example, the problems and expenses that allegedly developed from the defendant's participation in the first fraud scheme, including the alleged hiring of civil and criminal attorneys, would help explain and provide an additional financial motive for the defendant's alleged decision to concoct and participate in the second scheme. *See, e.g., United States v. Broccolo,* 797 F. Supp. 1185, 1191 (S.D.N.Y. 1992) ("Similarly, in a trial solely on Count Eight, evidence of the alleged fraudulent acts charged in Counts One through Seven would likely be admissible to establish a motive for defendant's false statement to the bankruptcy court, namely, to conceal the improprieties of his fraudulent credit card applications from creditors and the court."). It would also "shed light upon important elements of [the defendant's] scheme" and "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *United States v. Smith,* 727 F.2d at 220 (quotations and citations omitted); *see also United States v. Turoff,* 853 F.2d 1037, 1044 (2d Cir. 1988) ("the proof of one scheme is indispensable for a full understanding of the other").

In sum, the Court concludes that there is no substantial prejudice to the defendant from the joinder of the counts. Specifically, there is no basis to conclude that "there is a serious risk that a joint trial would compromise a specific trial right" of the defendant "or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, severance under Rule 14 is unwarranted.

### III. CONCLUSION

For the reasons set forth above and orally on the record in Court, defendant's motion to sever Counts One and Two from Counts Three through Six, pursuant to Rules 8(a) or 14, is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   November 25, 2008
         Central Islip, New York

\* \* \*

The attorney for the Government is Allen Lee Bode, Esq., of the United States Attorneys Office for the Eastern District of New York, 560 Federal Plaza, Central Islip, NY 11722. The attorneys for the defendant are Stephen P. Scaring, Esq. and Matthew W. Brissenden, Esq. of Scaring & Brissenden, PLLC, 666 Old Country Road, Suite 501, Garden City, New York, NY 11530.